1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JAMES W. PENGILLY,

Plaintiffs,

v.

NEVADA ASSOCIATION SERVICES et al.,

Defendants.

Case No. 2:14-cv-01463-RFB-NJK

**<u>ORDER</u>**

## I.    INTRODUCTION

Before the Court are Plaintiff's and Defendants' Motions for Summary Judgment. ECF Nos. 81, 82, 83, 84, 85, and 88. For the reasons stated below ECF No. 81 Motion for Summary Judgment is denied with prejudice in part and denied without prejudice in part; ECF No. 82 Motion for Summary judgment is GRANTED; ECF No. 83 is GRANTED in part and DENIED in part; ECF No. 84 Motion for Summary Judgment is DENIED as moot; and ECF Nos. 85 is denied with prejudice in part and denied without prejudice in part; ECF No. 88 Motion for Summary Judgment is DENIED.

## II.    BACKGROUND

This case involves a dispute over real property foreclosed on by a Homeowners Association

1
2
3

(HOA). The Property, located at 1141 Allerton Park, #411, Las Vegas, Nevada 89109, was originally owned by Plaintiff James Pengilly. The parties now dispute the validity of the foreclosure and title to the property.

4
5
6
7
8

Plaintiffs and counterclaimants bring the following causes of action: Ke Aloha Holdings, LLC ("Ke Aloha") asserts claims for quiet title and declaratory relief that it is the proper owner of the property. Ditech Financial, LLC, formerly known as Green Tree Servicing, LLC ("Ditech") seeks declaratory relief that the foreclosure sale was void as a matter of law. James Pengilly asserts quiet title and declaratory relief that he is the rightful owner and the foreclosure was invalid.

9
10
11
12
13
14

This case was removed on September 10, 2014 by counter-defendant Internal Revenue Service. ECF No. 1. At a hearing on January 13, 2016, the Court denied without prejudice a pending Motion for Summary Judgment and Motion to Dismiss, permitting the parties to refiled at the close of discovery ECF No.70. Discovery closed on March 23, 2016. ECF No. 58. The parties filed their Motions for Summary Judgment on March 30, 2016.

15
16
17

## II.   LEGAL STANDARD

### A.  Motion for Summary Judgment

18
19
20
21
22
23
24
25
26
27
28

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

1

**III.     MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS STUHMER ET AL. ECF NO. 82.**

2

The individual defendants who raise this motion are in the case only as defendants to James

3

Pengilly's claims for quiet title and declaratory relief. NAS is a defendant in those claims as well

4

as Ditech.

5

**A.  Undisputed Facts**

6

The Court finds the following facts to be undisputed. The individual defendants bringing

7

this motion are former members of the executive board of the Home Owners Association ("HOA")

8

at the time of the non-payment, alleged default, and foreclosure. Nevada Association Services

9

("NAS") was the trustee and private debt collector hired by the HOA that carried out the

10

foreclosure. Neither individual former members of the HOA executive board nor NAS have

11

claimed or now claims any interest in the property or proceeds from the foreclosure sale.

12

**B.  Legal Standard**

13

NRS 40.010 governs Nevada quiet title actions and provides: "An action may be brought

14

by any person against another who claims an estate or interest in real property, adverse to the

15

person bringing the action, for the purpose of determining such adverse claim." "In a quiet title

16

action, the burden of proof rests with the plaintiff to prove good title in himself." Breliant v.

17

Preferred Equities Corp, 918 P.2d 314, 318 (Nev. 1996). "[T]here is a presumption in favor of the

18

record titleholder." Id.

19

"[A] court will refuse to consider a complaint for declaratory relief if a special statutory

20

remedy has been provided. A separate action for declaratory judgment is not an appropriate method

21

of testing defenses in a pending action, nor is it a substitute for statutory avenues of judicial and

22

appellate review." Public Service Com'n of Nevada v. Eighth Judicial Dist. Court of State of Nev.,

23

818 P.2d 396, 399 (Nev. 1991) (internal citations omitted). The United States Supreme Court has

24

stated the following as to standing in cases for declaratory relief: "Basically, the question in each

25

case is whether the facts alleged, under all the circumstances, show that there is a substantial

26

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

27

warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S.

28

119, 127 (2007) (quoting <u>Maryland Casualty Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)).

### C.  Discussion

Defendants argue that the individual board members are not proper parties to this action. The individual parties are only in this case as Defendants in Pengilly's claims for quiet title (and the derivative "claim" for declaratory relief). Defendants argue that Nevada statutes governing claims related to statutory HOA requirements preclude claims against individual members. NRS 116.4117(2)(a)-(c) provides as follows: "Subject to the requirements set forth in NRS 38.310 and except as otherwise provided in NRS 116.3111, a civil action for damages or other appropriate relief for a failure or refusal to comply with any provision of this chapter or the governing documents of an association may be brought: (a) by the association against: (1) a declarant; (2) a community manager; or (3) a unit's owner; (b) by a unit's owner against: (1) the association; (2) a declarant; or (3) another unit's owner of the association; (c) by a class of units' owners constituting at least 10 percent of the total number of voting members of the association against a community manager". In their Reply and in their Response to Pengilly's MSJ, Defendants further argue that NRS 40.010, governing quiet title actions, permits suits against those who claim an adverse "estate or interest" in the property at issue. Pengilly argues that while individual members are absent from NRS 116.4118(2), their behavior is governed by NRS 116.31183, prohibiting certain forms of retaliation. Pengilly further argues that the misconduct of NAS and the HOA members is relevant to his claim for declaratory relief where he claims that he has superior interest in the property and that the foreclosure auction was invalid.

Pengilly's only claims are for quiet title and declaratory relief as to title—and the invalidity of the foreclosure sale, so as to establish title. Pengilly asserts no other statutory cause of action, and makes no claim that would require action or payment on the part of the individual former members of the HOA. Even if HOA members had some authority to provide relief, it is undisputed that these individuals do not control the current HOA, and that they did not file any liens and did not and do not claim any interest in the property. Pengilly represents in his Motion for Summary

Judgment (ECF 88) that only Ke Aloha claims an adverse interest in the property. In his deposition he stated he is unaware of any liens by individual members, and there are no facts in record showing any interest by individual members.

The plain language of NRS 40.010 permits quiet title claims against those who could provide and would be necessary for relief, parties claiming some adverse interest in the property. In evaluating the claims against Ke Aloha, the party with an adverse interest in the property, the Court can consider the claims as to the legitimacy of the foreclosure sale, and issue such declaratory relief as necessary and proper. But NAS and the individual members have no present interest in the determination of title or the determination of the legitimacy of the foreclosure sale. They are not necessary or indispensable to the claim for quiet title.

Even if the complaint could be read to seek declaratory judgment against these Defendants, the judgment as against these defendants would have no present or reasonably likely future impact on either Plaintiff or the Defendants. As such there may be no cognizable case or controversy sufficient to satisfy Article III standing. Therefore, the individual defendants will be dismissed from the case.

For the same reason, NAS must be dismissed from Pengilly's claims. The undisputed facts show that NAS acted as the foreclosure trustee or private debt collector for the HOA, and there is no evidence that NAS ever claimed any interest in the property. Therefore, NAS is dismissed from Pengilly's claims. NAS remains in the case as a defendant in Ditech's cross-claims. Therefore, the Court GRANTS ECF No. 82 Motion for Summary Judgment.

IV.   **Motions for Summary Judgment by James Pengilly, ECF No. 88, and Ke Aloha Holdings, ECF No. 81.**

A.  **Undisputed Facts**

The Court finds the following facts to be undisputed.

Plaintiff James W. Pengilly's ("Plaintiff' or "Pengilly") purchased the Property located within the Association on August 29, 2007, as evidenced by a Grant, Bargain, Sale Deed, recorded

in the Clark County Recorder's Office in Book No. 20070829, as Instrument 02229. James Pengilly, as trustee, pledged the Property to secure repayment of a promissory note for $414,400.00 to Bank of America, N.A. The beneficial interest of the Deed of Trust was transferred and assigned to Ditech and recorded on November 17, 2011. Fannie Mae has been the owner of the loan continuously since origination. Ditech is the undisputed beneficiary of the First Deed of Trust.

The Declaration requires, among other things, that each owner of a unit that has been annexed into the Association, including Pengilly, must pay to the Association monthly assessments. An owner's failure to pay assessments results in an automatically perfected, foreclosable delinquent assessment lien. On or about March 14, 2012, Pengilly and fifteen (15) other unit owners in WCL filed a lawsuit against Mark A. Stuhmer, Douglas L. Crook, Bill Blanchard, Kenneth R. Sailley, Erika Geiser (together "HOA's Executive Board") and other parties alleging violations of NRS 116 as well as other causes of action ("HOA Lawsuit"). Pengilly failed to pay overdue homeowners' assessments and, accordingly, on July 19, 2012, a Notice of Delinquent Assessment was recorded against the Property, which notice was mailed to the Property and to Pengilly via regular and certified return receipt requested to the Property pursuant to NRS 116.31162(1)(a).

On September 11, 2012, (which is over 30 days after mailing of the Delinquent Assessment Lien as required under NRS 116.31162(1)(b)) a Notice of Default and Election to Sell was recorded against the Property, which notice was mailed to Plaintiff via certified mail return receipt requested. On August 27, 2013, 11 months after the recording of the Notice of Default and Election to Sale, a Notice of Foreclosure Sale was recorded against the Property, which notice was mailed to Pengilly via certified mail return receipt requested. The Notice of Foreclosure Sale contained all information required pursuant to NRS 116.311635, including, but not limited to, the time and place of the sale of the Property. In addition, the Notice of Foreclosure Sale was published and posted as required by Nevada law.

. . .

On December 13, 2013, the Property was sold at public auction to Ke Aloha Holdings, LLC, for the sum of $17,100 as evidenced by a Foreclosure Deed. Following the completion of the HOA lien sale, NAS distributed funds to the HOA totaling over $14,000 and covering outstanding expenses for 21 months of assessments and other various charges. No calculation was made for the payment of Ditech on its claim.

In June 2013 a "terminating event"—an event which terminates declarant (developer) control over the HOA—occurred under NRS 116.31032, because five years passed since the right to add new units was last exercised. The parties stipulated in a state court action that such an event had occurred. They did not stipulate that the HOA lacked authority after June 2013. No court made any determination as to the effect of the terminating event, or the authority of the HOA.

On January 7, 2013, the declarant of the Association, West Charleston Lofts I, LLC, filed a petition for relief under Chapter 11 of the Untied Stated Bankruptcy Code. As a result of the Chapter 11 petition, with its corresponding automatic stay, the Association was prohibited from transferring control of the Association from the declarant to the homeowners. Counsel for the Declarant/Developer sent a letter to the HOA on Sept 20, 2013 stating that any transfer to homeowner control would violate the automatic stay set forth in 11 U.S.C. 362(a). The Association, as well as the plaintiffs (including Pengilly) in the State Court Action, each participated in and approved the Chapter 11 Bankruptcy Plan of Reorganization and entered into a Stipulation and Order for Amendments to Debtor's Proposed Plan of Reorganization Re: Treatment of Claims held by West Charleston Loft Owners Association ("BK Stipulation"). Among the issues addressed in the BK Stipulation was the treatment of the 6 units owned by the declarant, as well as the transition from Debtor (developer or declarant) control of the Association to homeowner control of the Association. More specifically, the BK Stipulation provides that the transition to a homeowner controlled HOA shall occur "upon entry of a final order approving the stipulation."

On May 1, 2014, the bankruptcy court entered its Findings of Fact, Conclusions of Law and Order Confirming Debtor's Fourth Amended Plan of Reorganization. As set forth in the

Findings of Fact and Conclusions of Law and Order Confirming Debtor's Fourth Amended Plan of Reorganization: All settlements, compromises, releases, discharges, exculpations and injunctions set forth in the Plan, shall be, and hereby are, effective and binding on all persons who may have had standing to assert such settled, released, discharged, exculpated or enjoined cause of action and no other person or entity shall possess such standing to assert such causes of action after the Effective Date.

Pengilly and other homeowners brought a lawsuit against the HOA on March 14, 2012. The HOA issued a notice of delinquent payments on July 19, 2012. The Notice of Default and Election to Sell was recorded on September 11, 2012. After it filed for bankruptcy, the HOA's Executive Board filed proofs of claims stating that an owner of six units in the association had been in arrears on at least five of its units since 2009 and yet no actions were taken against this owner.

### B.  The HOA's Authority to Foreclose

Pengilly argues that the HOA board did not have authority to foreclose, because it was divested of that authority when the "terminating event" occurred.

"Except as otherwise provided in this section, the declaration may provide for a period of declarant's control of the association, during which a declarant, or persons designated by a declarant, may appoint and remove the officers of the association and members of the executive board. A declarant may voluntarily surrender the right to appoint and remove officers and members of the executive board before termination of that period and, in that event, the declarant may require, for the duration of the period of declarant's control, that specified actions of the association or executive board, as described in a recorded instrument executed by the declarant, be approved by the declarant before they become effective. Regardless of the period provided in the declaration, a period of declarant's control terminates no later than the earliest of . . . (e) Five years after any right to add new units was last exercised." NRS 116.31032

"Except as otherwise provided in subsection 5 of NRS 116.212, not later than the termination of any period of declarant's control, the units' owners shall elect an executive board of

at least three members, all of whom must be units' owners. The executive board shall elect the officers of the association. Unless the governing documents provide otherwise, the officers of the association are not required to be units' owners. The members of the executive board and the officers of the association shall take office upon election." NRS 116.30134.

The statute appears to define declarant control as the power to appoint and remove officers and members of the executive board: "the declaration may provide for a period of declarant's control of the association, during which a declarant, or persons designated by a declarant, may appoint and remove the officers of the association and members of the executive board." NRS 116.31032, Regardless of the scope of control, the statute provides that certain events trigger the termination of "declarant's control." It says nothing as to the authority of the existing HOA officers and executive board members at the time of termination.

NRS 116.30134 provides that a new board "shall" be elected "not later than the termination of any period of declarant's control." The Nevada Supreme Court does not appear to have addressed what if any authority an HOA possesses in an interim period—after a terminating event has occurred but before the mandatory election, which the statute provides must occur at or before the time of the termination. The statute unambiguously terminates "declarant control" at the time but is silent as to the ongoing authority of a declarant-appointed HOA. While the statutes require an election at that time, the most logical and equitable reading of the statutory framework is that while the process of electing a new HOA must begin as soon as or before a terminating event occurs, the existing HOA maintains authority until new officers and executive board members can be elected. Therefore, the HOA maintained authority to foreclose regardless of the triggering event.

Moreover, Defendant Ke Aloha argues that the bankruptcy stay and subsequent Stipulation and Order for Amendments to Debtor's Proposed Plan of Reorganization, filed on March 10, 2014, included an agreement that a new HOA election would be held upon entry of the final order in that bankruptcy case. That stipulation and order includes and addresses debts owed by homeowners to the HOA. In this case a Notice of Default and Election to sell was recorded and sent to Pengilly

on September 11, 2012, the alleged terminating event occurred in June 2013, and the foreclosure sale occurred in December 2013. The undisputed facts further show that the developer's counsel represented to the HOA that it could not disband and elect a new board because of the automatic stay triggered by the bankruptcy filing on January 7, 2013.

Plaintiff stipulated in the bankruptcy case, months before the allegedly terminating event, to postponement of the shift to homeowner control until the final order in that case, which did not occur until May 2014. Moreover, the stipulation called for the receipt of debt payments and other actions to be carried out by the HOA during that period. Thus even if the bankruptcy stay did not as a matter of law supersede the automatic termination of the developer/declarant's authority, Plaintiff in effect stipulated to its authority to act as the HOA until the final order. Therefore, the Court grants summary judgment for Ke Aloha on this issue and finds that the HOA had the authority to pursue the foreclosure.

### C. Retaliatory Intent Would Not Bar Foreclosure

#### 1. Legal Standard

"An executive board, a member of an executive board, a community manager or an officer, employee or agent of an association shall not take, or direct or encourage another person to take, any retaliatory action against a unit's owner because the unit's owner has: (a) [c]omplained in good faith about any alleged violation of any provision of this chapter or the governing documents of the association; (b) [r]ecommended the selection or replacement of an attorney, community manager or vendor; or (c) [r]equested in good faith to review the books, records or other papers of the association. 2. In addition to any other remedy provided by law, upon a violation of this section, a unit's owner may bring a separate action to recover: (a) Compensatory damages; and (b) Attorney's fees and costs of bringing the separate action." NRS 116.31183

"The sale of a unit pursuant to NRS 116.31162 [common interest ownership foreclosure], 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption." NRS 116.31166; See 2015 Nevada Laws Ch. 266 (S.B. 306) (showing version

prior to 2015 amendments). However, the Nevada Supreme Court, evaluating claims under the same prior version of the statute, held that "in an appropriate case, a court can grant equitable relief from a defective HOA lien foreclosure sale." Shadow Wood HOA v. N.Y. Cmty. Bancorp., 366 P.3d 1105, 1106 (Nev. 2016). Where an association sells a property at a foreclosure sale for an inadequate price, and there is a showing of fraud, unfairness, or oppression, a court may grant equitable relief setting aside an HOA foreclosure sale. Id. at 1107, 1112, 1116. In determining the equities in an action to set aside a foreclosure sale, the Court should consider the position and "innocence" or lack thereof of a bona fide purchaser. See id. at 1114-15.

### 2. Discussion

Plaintiff argues that the foreclosure was retaliatory for the filling of the homeowner's lawsuit, and that the unlawful "agenda" in pursuing the foreclosure, invalidates it. Defendant Ke Aloha argues that the foreclosure sale extinguished any prior claim, and that even if the foreclosure was retaliatory pursuant to the statute, that would not negate an otherwise legitimate foreclosure for failure to pay HOA dues. As a preliminary matter Defendant is incorrect that the statute categorically bars any claim to invalidate an HOA foreclosure sale. "In an appropriate case, a court can grant equitable relief from a defective HOA lien foreclosure sale." Shadow Wood HOA v. N.Y. Cmty. Bancorp., 366 P.3d 1105, 1106 (Nev. 2016).

The undisputed facts show a valid debt to the HOA and a valid foreclosure pursuant to the HOA's lien. Moreover, Ke Aloha has shown that it was an "innocent" bona fide purchaser of the property, and Pengilly has presented no evidence or argument to the contrary. The court must consider Ke Aloha's status in its equitable determination. See Shadow Wood HOA, 366 P.3d at 1114-15. The Court finds there is insufficient evidence to establish retaliation under NRS 116.31183. And an allegation of inadequate price alone does not create a basis for setting aside the foreclosure.[1] Thus, the Court finds that Plaintiff has failed to raise a dispute as to equities sufficient to set aside the sale, and dismisses this claim.

---

[1] The Court also does not find the price to necessarily be inadequate. Purchasers in these types of sales would understand the potential for litigation over the sale and factor this into the price.

### D.  Ke Aloha's Purchase

#### 1. Legal Standard

"1. A limited-liability company is considered legally organized pursuant to this chapter: (a) At the time of the filing of the articles of organization with the Secretary of State; and (b) Upon paying the required filing fees to the Secretary of State. 2. A limited-liability company must not transact business or incur indebtedness, except that which is incidental to its organization or to obtaining subscriptions for or payment of contributions, until the company is considered legally organized pursuant to subsection." NRS 86.201

Under NRS 86.5483(1)(i) and NRS 80.015(1)(i), "[o]wning, without more, real property" does not constitute "transacting business" for foreign LLCs. Under NRS 86.213 "Every person . . . who is purporting to do business" in Nevada but who has failed to file articles of organization is subject to a fine between $1,000 and $10,000.  In Executive Management, Ltd. v. Ticor Title Ins. Co., the Nevada Supreme Court held that the proper remedy where an unqualified corporation seeks to litigate is to stay proceedings while they have an opportunity to cure the defect. 38 P.3d 872, 875 (Nev. 2002).

#### 2. Discussion

The undisputed facts show that the individual managing member of Ke Aloha attended the sale and purchased the property. The foreclosure deed states that Ke Aloha purchased the Home on December 13, 2013. The purchaser did not request that title be vested in Ke Aloha's name until December 17, 2013, one day after the articles of organization were filed.

Pengilly argues that contract principles require a meeting of the minds and consideration between two parties, and as Ke Aloha, referenced in the deed, did not exist, the foreclosure could not satisfy contract principles and must be overturned. Ke Aloha argues that the statute does not invalidate transactions by an unorganized LLC, but rather exists to establish penalties for operation of business while unorganized. Ke Aloha further argues that while a transaction by an unorganized may create temporary liability in the transacting individual, there is no authority to invalidate a transaction based solely on the use of the name of an unorganized entity.

- 12 -

It is not disputed that the managing member purchased the property and Pengilly does not raise defects other than the use of the name of the as yet unorganized LLC. Pengilly has presented no authority that would negate an otherwise legally valid contract carried out by a managing member because the member uses the name of an as yet unorganized LLC. Such a categorical rule would be inconsistent with the purpose of contract requirements, to ensure an enforceable, genuine mutual agreement. The quickly remedied naming issue here does not violate the principles or purposes of contract law, and absent authority to the contrary, the Court will not negate the sale for this reason.

Therefore, ECF No. 88 Motion for Summary Judgment by Plaintiff Pengilly is DENIED.

## V.     MOTION FOR SUMMARY JUDGMENT BY NAS AND THE HOA [ECF NO. 83]

This Motion seeks summary judgment against Ditech as defendants in Ditech's counterclaims. Ditech has only one claim for declaratory relief against all Counter-Defendants and Cross-Defendant. It seeks an order declaring the December 13, 2013 foreclosure sale void as a matter of law.

As laid out above, NAS was the foreclosure trustee, and has no present or future interest in the property. The Ditech claim against NAS is solely for declaratory judgment as to its participation in a completed past action—its role in the foreclosure sale. It does not seek damages against NAS, and NAS claims no present or potential future interest either in title to the property or in payment from any foreclosure sale. The Court finds that there is not a substantial controversy of sufficient "immediacy and reality" against NAS, where the only relief sought is a declaratory judgment that would affect no present or future interest of NAS.

The HOA makes essentially the same argument, that this is a dispute as to title to the property, and that the HOA does not claim title or any interest in title. However, Ditech argues that if the court were to grant the declaratory relief requested, Ditech would have a claim against the HOA for wrongful foreclosure and accounting, to recover the amount of its lien, which h it claims had priority over the HOA lien. The HOA has not responded to this argument, but reasserts that as

the only claim is one for declaratory relief, it cannot state a claim against the HOA. However, unless the HOA is willing to forfeit any claim of entitlement to the defaulted dues it recuperated in the foreclosure sale, there remains a justiciable case or controversy cognizable in a case for declaratory judgment.

## VI.   MOTION FOR SUMMARY JUDGMENT BY DITECH FINANCIAL [ECF NO. 85]

Ditech has only one claim, for declaratory relief against all Counter-Defendants and Cross-Defendant. It seeks an order declaring the December 13, 2013 foreclosure sale void as a matter of law.

### A.  Undisputed Facts

The Court finds the following additional undisputed facts related to this Motion.

On or about August 29, 2007, James Pengilly, as trustee, acquired Unit 411 in the West Charleston Lofts common interest community located at 1141 Allerton Park, #411, Las Vegas, Nevada 89109 (the "Property"). James Pengilly, as trustee, pledged the Property to secure repayment of a promissory note for $414,400.00 to Bank of America, N.A. The beneficial interest of the Deed of Trust was transferred and assigned to Ditech and recorded on November 17, 2011. Fannie Mae has been the owner of the loan continuously since origination. Ditech is the undisputed beneficiary of the First Deed of Trust pursuant to the provisions of NRS 116.3116(2) based upon the disclaimer of all other potential claimants in this matter.

The Property was subject to the provisions of the Amended and Restated Declaration of Covenants, Conditions and Restrictions and Grant and Reservation of Easements for West Charleston Lofts Owners Association (the "CC&Rs") recorded on July 3, 2007 in the Clark County Recorder's office as instrument number 200707030001035. The CC&Rs provide that no violation of the CC&Rs " ... shall operate to defeat or render invalid the rights of the Beneficiary under any Deed of Trust. The CC&Rs also include a specific reservation of rights as to super-priority liens.

Prior to the completion of the HOA Lien Sale in this matter, Charleston Lofts Owners Association adopted collection policies in 2007 and 2013. Neither of the Collection Policies

adopted by the Association address the enforcement of super-priority lien rights. In July 2012, the Association declared Pengilly delinquent on the payment of his assessments and caused to be recorded a Notice of Delinquent Assessment lien through its agent, Nevada Association Services, Inc. ("NAS"). The Notice of Delinquent Assessment Lien was recorded with the Clark County Recorder on July 19, 2012 as instrument number 20 201207190001100. The Notice of Delinquent Assessment lien makes no reference to the enforcement of superpriority lien rights. [Sep. Stmt. 7.]

There was no communication between NAS and the Association concerning the enforcement of superpriority lien rights. NAS was aware of the super-priority issue being litigated in Nevada Courts and that the investor "that had purchased the property at our foreclosure auctions" were suing for clear title [based on the super-priority]. NAS did not take a position regarding whether or not it was enforcing the superpriority lien / portion of the lien.

In September 2012, NAS, on behalf of the Association, recorded a Notice of Default and Election to Sell ("NOD"). The NOD makes no reference to the enforcement of superpriority lien rights. Again, there was no communication between NAS and the Association concerning the enforcement of superpriority lien rights in connection with the NOD. As is the practice of NAS, an authorization to publish was sent to the Board for review and execution prior to drafting and recording the Notice of Foreclosure Sale. However, it is not the practice of NAS to request that the Board confirm its intent to enforce superpriority lien rights. As a result, superpriority lien issues were not discussed between the Association and NAS. After the expiration of 90 days, NAS recorded its Notice of Sale on August 27 2013. ("NOS"). The NOS makes no reference to the enforcement of superpriority lien rights at the lien sale auction (the "HOA Lien Sale"). As with all of the other documents, there was no communication between NAS and the Association concerning the enforcement of superpriority lien rights in connection with the NOS. The Auction was ultimately conducted on December 13, 2013. Ke Aloha Holdings LLC was the successful bidder at the auction with a bid of $17,100.00. NAS issued a Foreclosure Deed for the Property to Ke Aloha Holdings. The Foreclosure Deed makes no reference to the enforcement of superpriority lien rights.

The Notice of Lien, Notice of Default, and Notice of Sale only discuss and relate to one Lien. The Notice of Lien used language such as "has a lien on the following" and "against which the lien is imposed." The Notice of Lien stated only that the amount of $4,410.60 was due upon its recording. The Notice of Default used language such as "reflected on said lien," "enforce the lien by sale," "obligation being foreclosed upon," "paying the entire amount," and stated only that the amount due was $6,634.44. Similarly, the Notice of Sale references "lien" singular and stated that there was an amount due of $15,126.53. These documents are the only public notices regarding the Lien, and the only information potential bidders had access to before the Foreclosure Sale. And, none of these documents evidence any attempts to bifurcate or limit the Lien, or give any indication that the HOA or NAS intended to reserve any portion thereof.

Following the completion of the HOA lien sale, NAS distributed funds to the Association totaling over $14,000 and covering outstanding expenses for 21 months of assessments and other various charges for the Association. No calculation was made for the payment of Ditech on its priority claim.

**B. Legal Standard**

"A foreclosure sale of the association's lien (whether judicial or nonjudicial) is governed by the principles generally applicable to lien foreclosure sales, i.e., a foreclosure sale of a lien entitled to priority extinguishes that lien and any subordinate liens, transferring those liens to the sale proceeds. Nothing in the Uniform Laws establishes (or was intended to establish) a contrary result." SFR Investment Pool 1 v. U.S. Bank, 334 P.3d 408, 414 (Nev. 2014) (quoting UCIOA (official commentary to statute)). "NRS 116.3116(2) establishes a true superpriority lien[.]" SFR Investment Pool 1 v. U.S. Bank, 334 P.3d 408, 414 (Nev. 2014). The scheme is designed to "avoid having the community subsidize first security holders who delay foreclosure."

"As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first

1  deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate

2  to a first deed of trust." SFR, 334 P.3d at 411 (Nev. 2014).

3  The SFR Court relied on the language of NRS 116.3116(2), which provides as follows:

4  "The [HOA] lien is also prior to all security interests described in paragraph (b) to the extent of

5  any [maintenance and nuisance-abatement] charges incurred by the association on a unit pursuant

6  to NRS 116.310312 and to the extent of the assessments for common expenses [i.e., HOA dues]

7  based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would

8  have become due in the absence of acceleration during the 9 months immediately preceding

9  institution of an action to enforce the lien . . . This subsection does not affect the priority of . . .

10  liens for other assessments made by the association." NRS 116.3116(2). This amounts to an

11  exception to an exception. The statute provides that "a lien under this section is prior to all other

12  liens and encumbrances on a unit except . . . (b) a first security interest on the unit recorded before

13  the date on which the assessment sought to be enforced became delinquent." NRS 3116(2)(b).

14

15  "It is the intent of the parties to the deeds which, in this case, must determine the nature

16  and extent of the estate conveyed[.]" City Motel, Inc. v. State ex rel. State Dept. of Highways, 336

17  P.2d 375, 377 (Nev. 1959). "The intentions of the parties are determined from all the circumstances

18  surrounding the transaction." Kartheiser v. Hawkins, 645 P.2d 967, 968 (Nev. 1982).

19  **C.  Discussion**

20  Ditech argues that there must be affirmative proof of intent to foreclose on the super-

21  priority "portion" of the lien and the absence of clear evidence in the prior notices and the deed,

22  and the testimony of the NAS representative that they did not know or take a position as to the

23  super-priority issue means that the Court must find that they foreclosed only on the sub-priority

24  portion. Ditech contends that the fact that the HOA used the proceeds to pay the entire arrears for

25  HOA dues indicates intent to foreclose on the sub-priority portion, because the HOA did not follow

26  the statutory requirement for prioritization after payment of the super-priority portion.

27  Ke Aloha argues that the statutory scheme does not permit an HOA to foreclose on only

28  the sub-priority portion of the lien; there is a single lien that may be foreclosed on, with portions

1  that have different priority.  Ke Aloha argues that even if the HOA can foreclose on only the sub-
2  priority portion, where all prior notices indicate intent to foreclose on the entire lien, for all unpaid
3  dues, and the deed does not indicate intent to bifurcate or foreclose only on the sub-priority portion,
4  the parties clearly intended to foreclose upon the entire lien, including the super-priority portion.

5       The statutory scheme establishes that "a lien under this section is prior" to all interests
6  excepting those including a first security interest, and that the super-priority portion of an HOA
7  lien "is also prior" to a first security interest (emphasis added). The undisputed facts show no
8  affirmative evidence of or even consideration of a separation of the super-priority versus sub-
9  priority liens or portions of a single lien, but rather demonstrate intent to foreclose based upon the
10 entire amount of unpaid HOA dues.

11      Ditech cites to the CC&Rs (HOA bylaws), which state that a violation should not operate
12 to defeat the rights of any beneficiary under a deed. However, the CC&Rs specifically reserve any
13 super-priority rights. In this case there was no unambiguous statement at the time of the sale of an
14 intent to foreclose on the sub-priority portion only, and to purchase the property encumbered by
15 the super-priority lien. The Court finds that where, as here, there was clear intent to foreclose based
16 upon the entirety of unpaid dues, which includes a lien that "is prior . . . to the extent [of the super-
17 priority portion," NRS 116.3116(2)," the clear intent is to foreclose upon both portions of the lien,
18 including the part which by operation of the statute has super-priority. Therefore, the Court need
19 not decide if the statute permits bifurcation and foreclosure only on the sub-priority portion, and
20 the Court denies summary judgment on the non-constitutional claims in ECF No. 85.

21

22

23 **VII.   STAY**

24      On August 12, 2016, the Ninth Circuit issued its decision on appeal in Bourne Valley Court
25 Tr v. Wells Fargo Bank, N.A., 832 F.3d 1154, 1159-60 (9th Cir. 2016), holding that NRS 116
26 violates the Due Process Clause and is facially unconstitutional. The Court of Appeals issued its
27 mandate in the appeal on December 14, 2016, vacating and remanding the judgment to the United
28 States District Court, District of Nevada. On January 26, 2017, the Nevada Supreme Court issued

its decision in <u>Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage</u>, 133 Nev. Adv. Op. 5, 2017 WL 398426 (Nev. Jan. 26, 2017), holding that NRS 116's foreclosure process does not constitute state action sufficient to support a due process challenge. The parties in <u>Bourne Valley</u> and <u>Saticoy Bay</u> are seeking review of both decisions in the United States Supreme Court. Bourne Valley's deadline to file its petition for writ of certiorari of the Ninth Circuit's Bourne Valley decision is April 3, 2017, and Wells Fargo's deadline to file its petition for writ of certiorari of the Nevada Supreme Court's Saticoy Bay decision is April 25, 2017. This Court additionally anticipates certifying an issue regarding NRS 116's notice requirement to the Nevada Supreme Court. As the ultimate mandate in these cases may affect issues in the instant litigation, this proceeding is hereby STAYED.

## VIII.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that ECF No. 81 is DENIED without prejudice as to the constitutional claims only, and denied with prejudice as to all other claims.

**IT IS FURTHER ORDERED** that ECF No. 82 Motion for Summary Judgment is GRANTED.

**IT IS FURHTER ORDERED** that ECF No. 83 Motion for Summary Judgment is GRANTED in part with respect to the claims against Nevada Association Services, and DENIED in part with respect to the West Charleston Lofts Homeowner's Association.

**IT IS FURTHER ORDERED** that ECF No. 84 Motion for Summary Judgment is DENIED as moot.

**IT IS FURTHER ORDERED** that ECF No. 85 is DENIED without prejudice as to the constitutional claims only and denied with prejudice as to all other claims.

**IT IS FURTHER ORDERED** that ECF No. 88 Motion for Summary Judgment is DENIED.

1    **IT IS FURTHER ORDERED** that this case is STAYED. Pending [81] and [85] are denied

2    without prejudice with respect to the constitutional claims only, with leave to refile as to those

3    claims once the stay is lifted.

4

5    **DATED**: <u>March 31, 2017</u>.

6

7    _____

8    **RICHARD F. BOULWARE, II**
     **UNITED STATES DISTRICT JUDGE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28